United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 02, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 19-35133** |
| **ALTA MESA RESOURCES,** | § | |
| **INC.**, *et al.*, | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **DAVID DUNN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 21-3909** |
| | § | |
| **HPS INVESTMENT** | § | |
| **PARTNERS, LLC**, *et al.*, | § | |
| | § | |
| Defendants. | | |

### MEMORANDUM OPINION

David Dunn, trustee of the AMH Litigation Trust, sued HPS Investment Partners, LLC and the ARM defendants (ARM Energy Holdings, LLC; Arm Midstream, LLC; and Asset Risk Management, LLC) for avoidance and recovery of constructive fraudulent transfers. This is Dunn's second amended complaint, which the Court permitted to file to "set forth a plausible basis as to what direct benefit was received by the Defendants from alleged constructive fraudulent transfers." ECF No. 64. For the reasons stated below, Dunn's second amended complaint is dismissed with prejudice.

## BACKGROUND

### I. FACTUAL BACKGROUND

Alta Mesa Holdings, LP and Oklahoma Energy Acquisitions, LP filed for chapter 11 on September 11, 2019.  Case No. 19-35133, ECF No. 1.  David Dunn is the Trustee of the AMH Litigation Trust, the successor-in-interest to certain causes of action of the AMH Debtors. ECF No. 70 at 1.  The Defendants are HPS Investment Partners, LLC, ARM Energy Holdings, LLC, ARM Midstream, LLC, and Asset Risk Management, LLC.  ECF No. 70 at 1.

The Defendants exercised control over Kingfisher Midstream, LLC at all times relevant to this proceeding.  ECF No. 63 at 2.  On August 31, 2015, AMH and KFM executed a gas gathering and processing agreement and a crude oil gathering agreement.  ECF No. 70 at 12.  Under the 2015 agreements, AMH was to pay KFM certain gathering rates and capital recovery fees, as well as convey or assign rights-of-way to KFM so it could build and maintain gathering systems. ECF No. 70 at 12–13.  Dunn alleges that the HPS and the ARM defendants played a substantial role in designing these agreements to prop up the value of KFM at the expense of AMH.  ECF No. 70 at 12– 13.

On December 1, 2016, AMH and KFM executed amendments to both the gas gathering and processing agreement and the crude oil gathering agreement.  ECF No. 70 at 16.  Dunn alleges that HPS coerced AMH into accepting the amendments by threatening to withhold AMH's funding.  ECF No. 70 at 17.  In 2016, the parties became concerned that their agreements might not sufficiently document that the rights under the agreement "ran with the land."  ECF No. 70 at 17.  If the rights did not "run with the land," then the parties could be subject to substantial losses.

According to the complaint, the 2016 Amendments intended to assure that the agreements contained covenants running with the land. ECF No. 70 at 17.  The amendments included a purported conveyance

of transportation interests, for which Dunn alleges AMH received no consideration in exchange. ECF No. 70 at 17.

On February 9, 2018, KFM, AMH, and Silver Run entered into a business combination that resulted in cashing out the owners of KFM and giving AMH's owners equity interest in Alta Mesa Resources, Inc., formerly known as Silver Run. ECF No. 70 at 19. Dunn alleges that the Business Combination consummated the "build-and-flip" strategy designed by the owners of KFM. ECF No. 70 at 19.

## II.   PROCEDURAL BACKGROUND

AMH's confirmed plan created the AMH Litigation Trust, which inherited certain causes of action held by the debtors, including the ones asserted by Dunn as trustee of the AMH Litigation Trust here. ECF No. 63 at 7. The Plan charged Dunn with bringing the inherited causes of action on behalf of unsecured creditors. ECF No. 63 at 7. Several creditors who remained unpaid on the petition date have claims going back to the period during which Dunn alleges that AMH was unable to meet its financial obligations and was financially strained due to the KFM agreement. ECF No. 63 at 7. The confirmed Plan included releases for various KFM debtors, and their current and former equity holders. Case No. 19-35133, ECF No. 1594 at 10, 37. But Dunn alleges that the confirmed Plan excluded the release of claims in this lawsuit against the HPS and ARM defendants. ECF No. 88 at 21. Those claims were assigned to the Trust. ECF No. 70 at 4.

### A.   Past Complaints

Dunn's initial complaint alleged actual fraudulent transfers based on the Gathering Agreements and assignment of non-STACK[1] assets. ECF No. 1. The Court granted the ARM defendants' motion to dismiss without prejudice to Dunn's ability to file an amended complaint. ECF No. 34. At the motion to dismiss hearing, the Court

---

[1] "STACK" is an acronym used in the oil and gas industry denoting a geographic region encompassing the Sooner Trend oil field, Anadarko basin, and Canadian and Kingfisher counties.

required Dunn's amended complaint to meet Federal Rule of Civil Procedure 9(b)'s pleading standards if the basis for relief is actual fraud. ECF No. 33.

Dunn's amended complaint brought six claims for the avoidance and recovery of constructive fraudulent transfer against the Defendants under the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act. ECF No. 40. The Court granted the Defendants' motions to dismiss, finding that "the complaint fails to sufficiently plead that Dunn may recover from HPS or the ARM defendants for any of the claims for constructive fraudulent transfer on the trustee's theory that defendants are transfer beneficiaries." ECF No. 63 at 11. The Court held that "[t]o reach any value in the hands of a shareholder on the theory that they are a transfer beneficiary, Dunn would need to pierce the veil." ECF No. 63 at 11 (citing *In re Hansen*, 341 B.R. 638, 645 (Bankr. N.D. Ill. 2006)).

The Court dismissed the first amended complaint without prejudice, granting Dunn leave to file a second amended complaint on narrow grounds to "set forth a plausible basis as to what direct benefit was received by the Defendants from alleged constructive fraudulent transfers." ECF No. 64.

### B.   Current Complaint

In the second amended complaint, Dunn brings two claims for the avoidance and recovery of constructive fraudulent transfers. He sues under both the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act (TUFTA). ECF No. 70. The two claims pertain to the payments and obligations AMH incurred from the Gathering Agreements. Both HPS and the ARM defendants filed 12(b)(6) motions to dismiss. ECF Nos. 74, 75. Following a hearing on the motions on

July 17, 2023, the Court took the matter under advisement.  ECF No.
88.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28
U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C.
§ 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).  The
dispute has been referred to the Bankruptcy Court under General Order
2012-6.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure
12(b)(6) "accepting all well-pleaded facts as true and viewing those facts
in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d
483, 484 (5th Cir. 2007).  However, the Court will not strain to find
inferences favorable to the plaintiff.  *Southland Sec. Corp. v. INSpire
Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief
can be granted "are viewed with disfavor and are rarely granted."
*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting
*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir.
2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must
provide sufficient factual matter to state a claim for relief that is
plausible on its face when accepting that factual matter as true.
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp.
v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face
when "the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct
alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility
standard asks for more than "a sheer possibility that the defendant
acted unlawfully." *Id*.; *see Lormand*, 565 F.3d at 232 ("[A] complaint
'does not need detailed factual allegations,' but must provide the
plaintiff's grounds for entitlement to relief—including factual
allegations that when assumed to be true 'raise a right to relief above

the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

The Court holds that Rule 8 applies to claims for a constructive fraudulent transfer.  Constructive fraud does not require the plaintiff to prove any facts relating to the defendants' intent, fraudulent or otherwise.  It does not make sense to require a plaintiff to plead to the heightened Rule 9(b) standard, which captures the much more specific requirements of actual fraud, where the plaintiff would never be expected to prove those facts at trial to prevail on the claim.  For example, the Rule 9(b) standard is interpreted as requiring the plaintiff to plead with particularity the "who, what, where, when and why" of the alleged fraud.  *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  However, the "why" is noticeably absent from the elements of constructive fraud.  *Compare* 11 U.S.C. § 548(a)(1)(A) (requiring a showing of "actual intent to hinder, delay, or defraud"), *with* § 548(a)(1)(B) (not requiring any such intent).

Fifth Circuit case law and the purpose of the pleading standards support our application of the Rule 8 standard in constructive fraudulent transfer.  In *Life Partners Holdings*, the Fifth Circuit declined to rule on whether the Rule 8 plausibility standard or the heightened Rule 9(b) standard should apply to a claim under TUFTA for constructive fraudulent transfer.  *Life Partners Holdings*, 926 F.3d at 118.  The Fifth Circuit noted that

> [t]he elements of a constructive fraudulent transfer under Texas law are the same as actual fraudulent transfer except instead of pleading fraudulent intent, the plaintiff must plead facts demonstrating: (1) a lack of reasonably equivalent value for the transfer; and (2) the transferor was "financially vulnerable" or insolvent at the time of the transaction.

*Id*. at 117.  Based on these elements, constructive fraud meaningfully differs from actual fraud because "the transaction is based on the

transferor's financial condition and the sufficiency of the consideration provided by the transferee." *Id.* (citing *E. Poultry Distribs., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3, 2001)). This Court held in *In re Juliet Homes, LP*, that "with constructive fraud, the actor's intent is irrelevant" when determining whether to apply the heightened Rule 9 standard to a claim for common law constructive fraud. No. 07-36424, 2010 WL 5256806, at *23 (Bankr. S.D. Tex. Dec. 16, 2010). There, this Court applied the Rule 8 standard to a common law claim for constructive fraud "because constructive fraud does not require proof of scienter." *Id.* at 23 (citing *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319 (Bankr. S.D.N.Y.1999)). In *Northstar*, this Court acknowledged the similar lack of an "intent" element in a claim for statutory constructive fraudulent transfer. *Katchadurian v. NGP Energy Cap. Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 721 (Bankr. S.D. Tex. 2020). This Court held that Rule 9(b)'s heightened pleading standard applied to actual fraudulent transfers but declined to rule on whether the heightened standard would apply to a claim for statutory constructive fraudulent transfer. *Id.*

The heightened pleading standard imposed on allegations of fraud is meant to protect parties' reputations from unsubstantiated allegations of fraudulent behavior. *Taylor v. Cmty. Bankers Sec., LLC*, No. 12-02088, 2013 WL 3166336, at *7 (S.D. Tex. June 20, 2013) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir.1992)). But in the context of constructive fraud, such concern is not warranted. Constructive fraud does not allege fraudulent intent or bad behavior on the part of the actors involved. Instead, constructive fraud looks to the economic realities of a transaction to determine whether the proper, equitable solution is to claw back transfers made in favor of one party to the unfair detriment of another. Because constructive fraud is, definitionally, not actual fraud, the Court declines to hold a plaintiff to the heightened standard of Rule 9(b). To do so would effectively cause every claim for constructive fraud to fail at the pleading stage where there is no "why" or other indicia of an intent element present in the facts of a case even though a claim for constructive fraudulent transfer

does not require a showing of intent. Instead, the Court applies the Rule 8 pleading standard and requires, simply, "a short and plain statement of the claim, showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Of course, regardless of whether Rule 8 or Rule 9 applies, one must set forth a plausible case for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## DISCUSSION

The second amended complaint fails to sufficiently plead an actual benefit that is avoidable and recoverable against the Defendants on the theory of constructive fraudulent transfer. Further, Dunn's allegation that the Defendants are transfer beneficiaries under § 550 is rejected by Fifth Circuit authority.

Dunn is not at fault here. He is the successor trustee of a trust established under a confirmed plan. That confirmed plan gave a release to the initial transferee. That was the business deal that was negotiated by the parties and confirmed by the Court.

Dunn may view the Plan releases as an unfair result and he is trying to find a way around the Plan. It is not, however, unfair at all. There is nothing unfair in enforcing the business deal made by the parties.

## I.   DIRECT BENEFIT

Section 550(a) of the Code provides the trustee three sources of recovery for a fraudulent transfer claim: the initial transferee, subsequent transferee, and the person or entity for whose benefit the transfer is made. 11 U.S.C. § 550(a). Section 24.009 of TUFTA follows the same language. TEX. BUS. & COM. CODE § 24.009(b) (allowing recovery from "a person for whose benefit the transfer was made"). Dunn seeks to recover transfers AMH made to KFM, not directly from the corporate entities, but instead from the shareholders of KFM, the HPS and ARM defendants. ECF No. 70.

His decision is unsurprising. The confirmed Plan released KFM from causes of action, including avoidance actions under §§ 544, 548, and recovery under § 550. Case No. 19-35133, ECF No. 1594 at 3, 10, 37. As a result, Dunn cannot recover from KFM, the initial transferee. To avoid and recover the transfers, Dunn must sue the shareholder-defendants, who were excluded from the release. But Dunn cannot assert that the Defendants are subsequent transferees. They received no cash, no transfers, and nothing at all from Dunn's predecessors. Instead, they were shareholders of a corporation that received actual value from sale proceeds.

Dunn's recovery must rely on the theory that the Defendants are transfer beneficiaries for "whose benefit the transfer is made." § 550(a). The court in *In re Grube* held that a trustee may bring an action against a "beneficiary of the initial transfer, without naming the initial transferee as a necessary party." 500 B.R. 764, 771–72 (Bankr. C.D. Ill. 2013). The initial transferee and the transfer beneficiary are liable parties on "equal statutory footing in the same subparagraph." *Id.* at 772; *see* § 550(a)(1). Nothing in the statute requires Dunn to seek avoidance against one party over another. Under *Grube*, the plan release should not affect Dunn's ability to seek avoidance and recovery of the transfers against the Defendants.

A transfer beneficiary is not explicitly defined in § 550 or in other provisions in the Code. The "paradigm" case is when a guarantor's liability on an underlying debt is reduced when a debtor makes a payment to a lender. *In re Arabella Petroleum Co., LLC*, 647 B.R. 851, 871 (Bankr. W.D. Tex. 2022) (noting that the guarantor receives benefit in the form of having its liability reduced). Courts have extended transfer beneficiary status outside of the guarantor-guarantee context.[2]

---

[2] *See, e.g.*, *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 769–70 (W.D. La. 2013) (transfers were made for the benefit of assignee if chapter 11 debtor continued to contribute labor and resources to shipbuilder after debtor assigned rights to construction contract); *In re Mastro*, 465 B.R. 576, 614–16 (Bankr. W.D. Wash. 2011) (wife of a chapter 7 debtor was liable as beneficiary of self-settled trusts which received fraudulent transfers); *Baldi v. Lynch (In re McCook Metals, LLC)*, 319 B.R. 570, 588–

In this line of cases, the threshold question is identifying the actual benefit, which must be "direct, ascertainable, and quantifiable" and "must correspond to . . . the value of the property that was transferred." *In re Arabella Petroleum Company, LLC*, 647 B.R. 851 (Bankr. W.D. Tex. 2022). An indirect benefit to shareholders is not actionable under fraudulent transfer law. *Id.* at 872.

Dunn was granted leave to amend his complaint on the narrow grounds of explaining the plausible basis as to what direct benefit was received by the Defendants. ECF No. 64. Count I of the second amended complaint alleges that the HPS and the ARM defendants received a "direct, quantifiable benefit" from the purported constructive fraudulent transfer "in the form of the proceeds of the sale of KFM through the Business Combination." ECF No. 70 at 23. Dunn identifies the benefit to HPS as at least $606 million in cash and $177.1 million in stock. ECF No. 70 at 23. The benefit to the ARM defendants is allegedly $92.2 million in cash and $95.8 million in stock. ECF 70 at 23.

The Court previously held that the KFM sale proceeds are not a direct benefit received by the Defendants. ECF No. 63 at 13. The second amended complaint merely supplants the first amended complaint with approximate numerical values of the sale proceeds apportioned to each defendant. This still does not meet the standard put forth by *Arabella*. Dunn does not allege the quantifiable amount of the sale proceeds attributable to the gathering agreement obligations and payments. Instead, Dunn alleges that any sale proceeds received by the Defendants from the Business Combination would not have been possible without the purported fraudulent transfers.

The argument proves too much. If a corporation receives a transfer, and retains the transfer, there are a limitless number of future scenarios, each of which would have a benefit to shareholders. Here are just a few examples:

---

90 (Bank. N.D. Ill. 2005) (transfer of right to purchase assets between corporate entities was made for the benefit of controlling shareholder of both entities).

- The funds could be held by the corporation indefinitely and the share price increases;

- The funds could be used to reduce the debt of the corporation and the share price increases;

- The corporation could be insolvent just before it received the funds, and then sold with just enough money to pay off all of its debt;

- The corporation could be sold and a distribution of sales proceeds could be made to the shareholders.

Under Dunn's argument, shareholder liability would arise only under the last scenario. But why should that be? Should the shareholders who chose to hold their shares with an increased value retain their good fortune, but the ones who decided to sell and reinvest their capital gains be liable? And how are sale proceeds more of a direct and quantifiable benefit than an increase in share price under *Arabella* when the sale is just a reflection of the share value?

Without expanding more about the direct benefit requirement, Dunn alleges that the transfers were intended to increase shareholder value after the Business Combination. Of course, the business decisions made during these agreements were intended to maximize profits. Ordinarily, that would result in an indirect benefit to the shareholders. But intent to benefit is insufficient for recovery without receipt of an actual benefit received by the alleged transfer beneficiary. *In re Arabella Petroleum Co., LLC,* 647 B.R. 851, 872 (Bankr. W.D. Tex. 2022). Receipt of indirect benefits do not transmogrify shareholders into transfer beneficiaries. *Id.*

Dunn further alleges that the AMH Gathering Payments, up to $7,634,360.40, are constructive fraudulent transfers that are avoidable and recoverable under §§ 548(a)(1)(B), 550(a)(1). ECF No. 70 at 23. Dunn alleges that the Gathering Agreement Obligations and AMH Gathering Payments, in the aggregate amount of $147,032,580.27, are

avoidable under TUFTA. ECF No. 70 at 26. But Dunn neither alleges how these obligations and payments correspond with the benefit received by the Defendants beyond an intent to sell KFM, nor alleges that any amount of the gathering payments was paid to the shareholder-defendants. Dunn merely suggests that the transfers increased the sales price of KFM and the Defendants benefitted from the sale. By this reasoning, any transaction that a corporation enters into and results in an increase of share price would subject shareholders to transfer beneficiary liability.

The record reflects that sales proceeds were paid to the Defendants. However, Dunn is unable to quantify how much the sales proceeds were increased as a result of the transfers. Applicable law requires that the liability of a party who "benefitted" from a transaction must bear a direct and quantifiable benefit, not the kind of speculative financial effect that Dunn alleges here.

Dunn argues that because the ultimate sales proceeds were enhanced as a result of the transfer, the defendants should be held liable as parties that "benefitted" from the transaction. But Dunn does not directly confront *Arabella*, a recent decision that does not support that result. If the benefit received is not direct or does not correspond to the value of the transferred property, it is treated an indirect benefit. *In re Arabella Petroleum Company, LLC*, 647 B.R. 851 (Bankr. W.D. Tex. 2022).

A brief reversion to the all-important facts, taken in the light most favorable to Dunn is appropriate.

- KFM, the initial transferee, received over $147 million from the 2015–16 gathering agreements within a three-year period. ECF No. 70 at 2.

- Per the 2015 agreements, AMH was obligated to pay capital recovery fees, which are foreign in the gas industry, to KFM. ECF No. 70 at 11. Because the fees were 90-100%

higher than market rates, AMH was forced to sell oil and gas at a loss. ECF No. 70 at 11.

- The 2016 amendments transformed the 2015 agreements into covenants that run with the land and conveyed transportation interests to KFM without any additional consideration to AMH. ECF No. 70 at 25. As a result of these obligations and payments, KFM's financial condition greatly improved right before the Business Combination. ECF No. 70 at 23.

- After the Business Combination, KFM was sold and the Defendants received the increased value of KFM in sale proceeds from the 2015–16 agreements.

- The Business Combination occurred in February 2018, approximately three years after the first of a series of conveyances that Dunn seeks to avoid.

This type of additive value is undoubtedly a benefit. But, the law does not impose liability on shareholders when the benefit is so attenuated.

Here, the sale price does not correspond to the value of the transfers in any ascertainable way. It is an incidental, indirect benefit from agreements that were entered into years before the Business Combination and sale of KFM occurred. Dunn cannot directly quantify the amount that the transfers increased the sales price. The sales price alone does not directly reflect the corresponding benefit from the value of the transfers. The benefit received by the shareholders is merely an indirect benefit from business agreements.

II.   SHAREHOLDER STATUS

Since Dunn cannot plausibly allege the direct benefit received by the Defendants, Dunn must rely on the Defendants' position as shareholders. In the Fifth Circuit, shareholders are not liable for transfers to the corporation unless (i) they actually received

distributions of the transferred property; or (ii) there is reason to pierce the corporate veil. *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 266 (5th Cir. 2016) (citing *Schechter v. 5841 Building Corp. (In re Hansen)*, 341 B.R. 638, 645–46 (Bankr. N.D. Ill. 2006)). Here, Dunn does not plausibly allege that the Defendants received any distribution of the transferred property. He concedes that he is not seeking recovery from the Defendants as subsequent transferees. Dunn further does not allege grounds for piercing the corporate veil. At the July 17, 2023, hearing, Dunn argues that veil-piercing is only necessary under alter-ego liability where the "control" shareholder is treated as an initial transferee. ECF No. 88 at 28.[3] But even if he pursued veil-piercing, the Fifth Circuit has only recognized veil piercing in cases of actual fraud, which is not plead here.[4] *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 442–44 (5th Cir. 2013) (recognizing that limited liability protection can only be removed if complainant proves actual fraud under TEX. BUS. ORG. §§ 21.223(a)(2), (b)); ECF No. 63 at 16.

Dunn creatively alleges that the Defendants had an active role in "diverting value" from AMH to KFM and received that "diversion in the form of cash proceeds." ECF No. 77 at 19. The second amended complaint details how the Defendants, with their substantial ownership rights in KFM and AMH, orchestrated the gathering agreements with the intent of flipping KFM for profit. ECF 74 at 8. Dunn looks outside the Fifth Circuit to find cases conferring transfer beneficiary status on active shareholders.

In *Baldi v. Lynch (In re McCook Metals, LLC)*, the court held that a majority shareholder of an insolvent debtor was a transfer beneficiary

---

[3] The Court previously held that veil-piercing is only applicable in the context of actual fraud. ECF No. 63 at 14. In this complaint, Dunn's claims are limited to the constructive fraudulent transfer theory.

[4] Conversely, Oklahoma does not require a pleading of actual fraud to pierce the corporate veil. *Franzier v. Bryan Memorial Hosp. Authority*, 775 P.2d 281, 288 (Okla. 1989) ("If one corporation is but an instrumentality or an agent of another, corporate distinctions must be disregarded and the two separate entities must be treated as one.").

under § 550. 319 B.R. 570, 589–90 (Bankr. N.D. Ill. 2005). The insolvent debtor transferred its rights to acquire assets worth $11 million to another company controlled by the same shareholder. 319 B.R. 570, 589–90 (Bankr. N.D. Ill. 2005). In exchange, the insolvent debtor received less than reasonably equivalent value in the amount of $7,826,959. *Id.* at 589. The court held that the transfer was constructively fraudulent and was made for the benefit of the shareholder. *Id.*

Here, the second amended complaint follows the reasoning set forth in *McCook*. Dunn's numerous allegations focus on identifying "badges of fraud" in § 548(a)(1)(B). AMH was allegedly "cash-flow insolvent" between 2015–16 and was undercapitalized with a debt-to-equity ratio of 20 to 1. ECF No. 70 at 14. AMH received less than reasonably equivalent value in exchange for making the Gathering Payments and incurring the Gathering Agreement Obligations. ECF No. 70 at 21. Dunn alleges there was common ownership between AMH and KFM by HPS which stood on both sides of the transaction and sought to benefit from the transfers which preceded the Business Combination. ECF No. 70 at 6. Like in *McCook*, Dunn alleges the Defendants are transfer beneficiaries due to their involvement as controlling shareholders.

Perhaps Dunn's allegation that the Defendants are transfer beneficiaries is a plausible one under Fourth Circuit law. But even if Fourth Circuit law governed, Dunn would still need to plausibly allege that the Defendants received an actual benefit that is quantifiable and accessible by the Defendants. *McCook*, 319 B.R. at 590–93 (noting that a "merely theoretical benefit is not sufficient, since it would not be subject to disgorgement"). He has not sufficiently done so.

The Court is also cautious in disregarding Fifth Circuit precedent when *Janvey* provides us with clear directive that majority shareholders are not liable for transfers they did not actually receive unless a showing for veil-piercing can be made. *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248,

266 (5th Cir. 2016).   Dunn instead requests the Court to make a distinction based on *McCook*.

There is reason to avoid making that distinction here. Corporations under common ownership make agreements all the time. Many of these agreements are not as profitable for one side of the transaction.   Many of these agreements are intended to increase value of an entity's shareholders.  This may be what happened here.  But that does not justify disregarding the corporate form and exposing benefitted shareholders to fraudulent transfer avoidance actions by default.  It also does not permit a trustee to trace the transfers to a theoretical amount of sale proceeds.

The Fifth Circuit provides Dunn with multiple avenues of recovery.  He could have amended his complaint to plead actual fraud, albeit under the higher Rule 9 standard, or to pierce the corporate veil and recover from the Defendants as initial transferees under alter-ego liability.  Alternatively, *Arabella* and *Janvey* permitted Dunn to recover on the constructive fraudulent transfer theory if he could have plausibly plead that Defendants received a direct and quantifiable benefit.  Dunn did not sufficiently plead any theory.

Dunn has had multiple opportunities to replead.  Further efforts would be futile.  The second amended complaint must be dismissed with prejudice.

## CONCLUSION

The Court will enter an order consistent with this Memorandum Opinion.

Signed:  10/01/2024

Marvin Isgur
United States Bankruptcy Judge